NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3223-23
                          A-3239-23

ALBERT H. WUNSCH, III,

     Plaintiff-Respondent,

v.

CTE REPUBLICANS FOR
ENGLEWOOD CLIFFS, ZHI
LIANG, RIVKA BIECAGZ,
and PENNY ROUSOULI,

     Defendants-Respondents,

and

MARK PARK,

     Defendant-Appellant,

and

INFO@ENGLEWOODCLIFFS.COM,
and TIM KOUTROUBAS,

     Defendants.
_____

ALBERT H. WUNSCH, III,

     Plaintiff-Respondent,

v.

| APPROVED FOR PUBLICATION |
| :---: |
| **January 8, 2026** |
| **APPELLATE DIVISION** |

CTE REPUBLICANS FOR
ENGLEWOOD CLIFFS, ZHI
LIANG, RIVKA BIECAGZ
and PENNY ROUSOULI,

      Defendants-Appellants,

and

MARK PARK,

      Defendant-Respondent,

and

INFO@ENGLEWOODCLIFFS.COM,
and TIM KOUTROUBAS,

      Defendants.

_____

Argued October 8, 2025 – Decided January 8, 2026

Before Judges Mayer, Gummer, and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5605-23.

Donald F. Burke argued the cause for appellant Mark Park in A-3223-23 and respondent in A-3239-23 (Law Office of Donald F. Burke, attorneys; Donald F. Burke and Donald F. Burke, Jr., on the briefs).

Michael S. Zicherman argued the cause for appellants CTE Republicans for Englewood Cliffs, Zhi Liang, Rivka Biecagz and Penny Rousouli in A-3239-23 and respondents in A-3223-23 (Peckar & Abramson, PC, attorneys; Michael S. Zicherman and Brian C. Glicos, on the briefs).

> Albert H. Wunsch, III argued the cause for respondent Albert H. Wunsch, III (Law Offices of Albert H. Wunsch, III, attorneys; Albert H. Wunsch, III and Matthew R. Puma, of counsel and on the briefs; Jeffrey Zajac, on the briefs).

The opinion of the court was delivered by

GUMMER, J.A.D.

These appeals arise from a defamation action filed by plaintiff Albert H. Wunsch, III and defendants' subsequent applications for dismissal of the case and for a fee award pursuant to the Uniform Public Expression Protection Act (UPEPA), N.J.S.A. 2A:53A-49 to -61.[1] Defendants appeal from various orders culminating in the denial of their applications. Perceiving no error by the trial court, we affirm.

## I.

On October 17, 2023, plaintiff filed a verified complaint and an application for an order to show cause with a supporting certification. He named as defendants CTE Republicans for Englewood Cliffs (CTE), which he described as "the Council To Elect Republicans for the Borough of Englewood Cliffs for the 2024 election"; Mark Park, a former councilmember and then Republican candidate for mayor of the Borough; Zhi Liang and Rivka

---

[1] We consolidated these back-to-back appeals for the purpose of issuing a single opinion.

Biecagz,[2] former councilmembers and then Republican candidates for council; and Penny Rousouli, whom he identified as the chairperson or officer of the Englewood Cliffs Republican Party. He alleged defendants had distributed documents to Borough residents containing defamatory statements about him, "well aware that the information they disseminated to the general public was completely false."

Plaintiff specifically complained about a document defendants allegedly had sent by email to Borough residents on October 7, 2023, and a document defendants allegedly had mailed to Borough residents on October 8. Both documents contained a photograph of plaintiff and identified him by name and as "Borough Attorney" and "EC Democrats Leader and De[]facto Mayor." In both documents, the following statement appeared beneath plaintiff's photograph: "Paid $800K+ TAXPAYER MONEY TO SELL US OUT." Both documents also contained a photograph of mayoral candidate Kris Kim, identifying him as "Wunsch's 'Yes' Man."

In the October 7 document, the following language appeared below plaintiff's photograph and above Kim's photograph: "Wunsch gets paid to run the Democratic Party. IS THIS ILLEGAL BEHAVIOR?" and "WHY

---

[2] We note the spelling of defendant Biecagz's name varies in the record. We respectfully use the spelling contained in the verified complaint.

DOESN'T KIM USE OUR TAX DOLLARS TO FIX OUR FLOODING ISSUES INSTEAD OF GIVING MILLIONS TO WUNSCH & CO IN NAME OF SETTLEMENT?" This language appeared beneath Kim's photograph: "KRIS KIM, SHOW US ONE VOTE WHERE YOU STOOD UP AGAINST WUNSCH?" and "BERGEN COUNTY DEMOCRATS WILL FILL THEIR COFFERS BY ARRANGING TO BUILD IN EC THROUGH WUNSCH?" At the bottom of the October 7 document, recipients were urged to "VOTE REPUBLICANS FOR A BALANCED COUNCIL" and "END FURTHER CORRUPTION IN OUR TOWN," specifically requesting a vote for defendants Park, Liang, and Biecagz. The October 7 document stated it had been paid for by defendant CTE.

The October 8 document contained this language: "AS MAYOR, KIM WILL CONTROL THE PLANNING BOARD AND BLINDLY APPROVE BUILDER[']S APPLICATIONS" and "IS KRIS KIM HELPING BERGEN COUNTY DEMOCRATS FILL THEIR COFFERS BY ARRANGING TO BUILD THROUGH WUNSCH?" The October 8 document also urged recipients to vote for defendants Park, Liang, and Biecagz.

In the complaint and supporting certification, plaintiff denied he was the leader of the Englewood Cliffs Democrats and asserted the statements in the documents were false. He alleged that days after the documents'

dissemination, he was terminated from his position as special counsel to the Borough on affordable-housing litigation. He also asserted he and his law firm had received calls from clients and others regarding the documents and that he had been asked by a councilmember if he was "on the take" or taking bribes. He referenced a "flier" defendants allegedly had sent on October 15, 2023, as evidence of defendants' "relentless publishing." Plaintiff sought a declaration the October 7 and October 8 documents were defamatory; an order requiring defendants to retract the documents, issue an apology and admit the documents were false, and to desist from further defaming plaintiff; and an award of compensatory and punitive damages along with counsel fees and costs.

On October 26, 2023, the trial court entered an order to show cause, which scheduled a hearing to take place on November 15, 2023. After receiving supplemental submissions from plaintiff and denying defendants' adjournment request, the court conducted the November 15 hearing with no defendants present and entered an order granting plaintiff's application as unopposed. In the order, the court found "[d]efendants' publications of October 7, 8, and 15, 2023, and November 3, 5, and 6, 2023, [rose] to the level of defamation as against [p]laintiff and his personal and business reputation" and that the October 7 and 8 publications constituted libel per se. The court directed defendants to submit for review and ultimately distribute an

"Approved Retraction" and an "Approved Public Apology"; identify the individuals who had supplied defendants with the information they published; and desist from issuing any further publications about plaintiff. The court scheduled a hearing to address the retraction and the apology in case the parties could not reach an agreement on the language of those documents and a proof hearing regarding plaintiff's alleged damages.

After receiving defendant Rousouli's November 16, 2023 certification, the court determined defendants had not received a timely response to their adjournment requests.[3] The court entered a November 20, 2023 order staying the November 15, 2023 order and scheduling a hearing to take place on November 27, 2023.

On the same day the court issued that order, defendants CTE, Liang, Biecagz, and Rousouli (the CTE defendants) applied for an order to show cause, seeking to have the November 15 order vacated, the verified complaint dismissed, and an award of counsel fees and costs. Defendants submitted their certifications and the certification of their counsel, who cited UPEPA in support of the application. Defendant Park also applied for an order to show cause, seeking the same relief.

---

[3] In that certification, defendant Rousouli stated she was "the Republican County Committee Chairperson and the treasurer of [CTE]."

In a November 21, 2023 order, the court converted defendants' applications into motions to dismiss, found their request to stay the November 15, 2023 order moot given the November 20, 2023 order, and scheduled a return date of December 15, 2023, for all pending matters. On December 1, 2023, Park filed a "cross-motion" to vacate the November 15, 2023 order. The court heard argument in December 2023 and January 2024 and reserved its decision.

Before the second argument day, plaintiff filed a first amended verified complaint, naming as additional defendants Tim Koutroubas, whom he identified as the former Borough council president, and Info@englewoodcliffs.com, an entity plaintiff claimed was owned and operated by Koutroubas and used to email the allegedly defamatory documents.[4] Plaintiff asserted that on November 3, 2023, defendant Park had sent an email that contained the following allegedly defamatory statement:

> Democrats and their favorite lawyer Albert Wunsch
> have attacked us claiming to be victims of defamation.
> This is another instance of intimidating immigrants by
> attempting to silence us with this frivolous behavior
> since we are contesting the Mayor and Council seats
> Mr. Wunsch is all too well known to control.

---

[4] The additional defendants did not participate in these appeals. Defendant Koutroubas appeared before the court on the second argument day and stated he had not been served with any papers.

The email urged recipients to vote for defendants Park, Liang, and Biecagz and indicated it had been paid for by defendant CTE. Plaintiff further alleged defendant Koutroubas had sent emails on November 5 and 6, 2023, containing defamatory statements. In both emails, Koutroubas asked recipients to vote for defendants Park, Liang, and Biecagz and indicated defendant CTE had paid for the emails. In the November 5 email, Koutroubas stated a "corrupt scheme by the Democrats" had been "devised by their leader, former Borough Attorney Al Wunsch." In the November 6 email, Koutroubas stated plaintiff had offered him "his free legal services" to handle a case and referenced his belief the offer "was an attempt by [plaintiff] to put [Koutroubas] in his pocket."

After the second day of argument, the parties continued to file submissions with the court. Those submissions included defendant Park's application for an order to show cause in which Park sought an order vacating the November 15, 2023 order, dismissing the complaint, awarding him counsel fees, and restraining plaintiff from using "the pendency of the within action to preclude [him] from exercising his powers as Mayor of the Borough . . . , including voting on matters involving the employment of [plaintiff] as an attorney for the Borough . . . and whether to pay [his] bills." On April 3, 2024, the court entered the order to show cause and scheduled a return date.

A- 3223-23

Defendant Park filed a "supplemental application" seeking temporary restraints against plaintiff and "those acting in concert with him," preventing them from using the pendency of this lawsuit to preclude Park from exercising his mayoral powers. The court denied the application for temporary restraints in an April 11, 2024 order.

On May 31, 2024, the court entered three orders and a comprehensive written decision. In the first order, the court vacated the November 15, 2023 order, denied defendants' applications to dismiss the complaint and for counsel fees and costs, and directed defendants to answer the complaint within twenty days. In the second order, the court denied the CTE defendant's order to show cause application. The court attached its decision to the first and second orders.

In the decision, the court found plaintiff had pleaded all elements of a defamation claim against defendants sufficient to survive defendants' dismissal applications and that whether plaintiff would be able to prove those elements required further discovery. Specifically, the court held additional discovery was needed to determine whether plaintiff had established that each of the defendants had participated in publishing the allegedly defamatory statements at issue and whether plaintiff was bound by the heightened actual-malice standard. Nevertheless, the court concluded, for purposes of the pending

10

applications, plaintiff's pleadings supported a finding of defamation, even under the actual-malice standard, for some of the statements in the October 7 and 8 documents. The court also found plaintiff had pleaded a claim for libel per se sufficient to withstand a dismissal motion and required further discovery to determine whether plaintiff had established damages.

The court rejected defendants' requests for dismissal and counsel fees under UPEPA. For purposes of defendants' applications, the court accepted the complaint "may be seen as based on [defendants'] exercise of the right of freedom of speech," citing N.J.S.A. 2A:53A-51(b)(3). The court, however, held defendants had failed to satisfy the requirements under N.J.S.A. 2A:53A-55(a)(3) "because the court has determined plaintiff has pleaded all elements of the causes of action and the issue of whether plaintiff will be able to prove them is not yet before the court" given the need for additional discovery.

In the third order, the court denied defendant Park's application to enjoin plaintiff and others in connection with Park exercising his mayoral powers. The court explained in the order that Park's application was "rooted" in a different lawsuit filed by other councilmembers. The court found that "[d]espite the court's multiple attempts during oral argument to have defense counsel explain or identify any specific conduct that might be encompassed

 A- 3223-23

within the restraint he sought, no clarification or identification of enjoinable conduct was provided."

These appeals followed. In their notice of appeal, the CTE defendants stated they were appealing from the paragraphs of the first May 31, 2024 order, denying defendants' dismissal and counsel fee applications under UPEPA. In his notice of appeal, Park stated he was appealing from each of the May 31, 2024 orders as well as the April 11, 2024, November 21, 2023, and November 15, 2023 orders.[5]

## II.

We begin by addressing defendants' appeals of the court's denial of their dismissal and counsel-fee applications under UPEPA set forth in the first May 31, 2024 order.

In considering the parties' UPEPA arguments, we are guided by the familiar rules of statutory interpretation. We review questions of statutory interpretation de novo. In re H.D., 241 N.J. 412, 418 (2020). In interpreting a statute, we "determine and give effect to the Legislature's intent." Ibid. (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[S]tatutory construction begins with an examination

---

[5] While these appeals were pending, defendant Park moved to supplement the record. We granted that motion and have considered the supplemental submission consistent with Rule 1:36-3.

of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

With those rules in mind, we consider the applicable provisions of UPEPA. Pursuant to UPEPA, a party served with a "pleading that asserts a cause of action to which [UPEPA] applies . . . may file an application for an order to show cause . . . to dismiss the cause of action." N.J.S.A. 2A:53A-51. UPEPA applies to:

> a cause of action asserted in a civil action against a person based on the person's:
>
> (1) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;
>
> (2) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or
>
> (3) exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United States

Constitution or the New Jersey Constitution, on a matter of public concern.

[N.J.S.A. 2A:53A-50(b).]

"N.J.S.A. 2A:53A-55(a) sets forth the grounds on which the party filing the order to show cause [application] can prevail," thereby obtaining a dismissal of the case. Satz v. Starr, 482 N.J. Super. 55, 64 (App. Div. 2025). N.J.S.A. 2A:53A-55(a) provides:

> a. In ruling on an order to show cause under [N.J.S.A. 2A:53A-51], the court shall dismiss with prejudice a cause of action, or part of a cause of action, if:
>
> (1) the moving party established under [N.J.S.A. 2A:53A-50(b)] that this act applies;
>
> (2) the responding party fails to establish under [N.J.S.A. 2A:53A-50(c)] that this act does not apply; and
>
> (3) either:
>
> (a) the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint; or
>
> (b) the moving party establishes that:
>
> (i) the responding party failed to state a cause of action upon which relief can be granted; or
>
> (ii) there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

In deciding an order to show cause application brought under N.J.S.A. 2A:53A-51, "the court may consider the pleadings, the order to show cause application and supporting certifications, briefs, any reply or response to the order to show cause, and any evidence that could be considered in ruling on a motion for summary judgment." N.J.S.A. 2A:53A-54. On the filing of an application for an order to show cause, the court, with certain exceptions, may stay "all other proceedings" between the parties. N.J.S.A. 2A:53A-52(a)(1); see also Satz, 482 N.J. Super. at 64. The court also "may allow limited discovery if a party shows that specific information is necessary to establish whether a party has satisfied or failed to satisfy a burden under [N.J.S.A. 2A:53A-55(a)] and the information is not reasonably available unless discovery is allowed." N.J.S.A. 2A:53A-52(d).

If the party seeking an order to show cause under N.J.S.A. 2A:53A-51 prevails on that application, "the court shall award [to that party] court costs, reasonable attorney's fees, and reasonable litigation expenses related to the order to show cause." N.J.S.A. 2A:53A-58(1). If the plaintiff prevails "and the court finds that the order to show cause was frivolous or filed solely with intent to delay the proceeding," then the court "shall award" those fees, costs, and expenses to the plaintiff. N.J.S.A. 2A:53A-58(2).

A court deciding a UPEPA order to show cause application must first determine if, under N.J.S.A. 2A:53A-50(b), UPEPA applies to the challenged cause of action. Satz, 482 N.J. Super. at 66. For purposes of defendants' applications, the court accepted the complaint "may be seen as based on [defendants'] exercise of the right of freedom of speech" and, thus, UPEPA applied under N.J.S.A. 2A:53A-51(b)(3). That determination is not challenged on appeal.

A court then determines whether "there are grounds to grant the[] order to show cause [application] under N.J.S.A. 2A:53A-55(a)." Satz, 482 N.J. Super. at 66. Defendants contend that in making that determination, the court failed to apply the correct legal standard. We disagree.

Specifically, defendants fault the court for applying the standard under Rule 4:6-2(e) in deciding whether the complaint was subject to dismissal. But the language of N.J.S.A. 2A:53A-55(a)(3)(b)(i) – requiring the court to determine whether "the responding party failed to state a cause of action upon which relief can be granted" – nearly mirrors the language of Rule 4:6-2(e), which acknowledges a defense based on a "failure to state a claim upon which relief can be granted." Thus, a plain reading of N.J.S.A. 2A:53A-55(a)(3)(b)(i) requires the court to consider a UPEPA dismissal application under a Rule 4:6-2(e) standard. We perceive no error in the court's application of the Rule 4:6-

16

2(e) standard in deciding whether dismissal was appropriate under N.J.S.A. 2A:53A-55(a)(3)(b)(i).

Had the court stopped there, defendants' arguments might have had merit. But the court didn't limit its consideration of defendants' application to N.J.S.A. 2A:53A-55(a)(3)(b)(i) and the Rule 4:6-2(e) standard. It also viewed defendants' applications under a summary-judgment standard, consistent with N.J.S.A. 2A:53A-55(a)(3)(a) and -55(a)(3)(b)(ii), which respectively require the court to consider whether "the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint" and whether "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action."

That statutory language calls for the application of the summary judgment standard. See R. 4:46-2(c) (providing a moving party is entitled to summary judgment if "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law"); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (finding a court deciding a summary judgment motion must determine "whether there exists a 'genuine issue' of material fact that precludes summary judgment"); Richie & Pat Bonvie Stables, Inc. v. Irving, 350 N.J. Super. 579,

588 (App. Div. 2002) (reversing summary judgment, court rejects motion judge's conclusion plaintiffs failed to present a prima facie case of their cause of action).

And the court also applied that standard. It considered not only whether plaintiff had "sufficiently pleaded" his causes of action but also whether he had "establish[ed] the elements" of his claims. The court ultimately held that a determination of whether plaintiff would be able to prove those elements required further discovery and exercised its authority under N.J.S.A. 2A:53A-52(d) to "allow limited discovery . . . to establish whether a party has satisfied or failed to satisfy a burden under [N.J.S.A. 2A:53A-55(a)]."

Defendants contend the court erred in permitting discovery and not dismissing the case under the summary-judgment provisions of UPEPA, N.J.S.A. 2A:53A-55(a)(3)(a) and -55(a)(3)(b)(ii). Reviewing the record de novo and applying the same standard as the court, we disagree with defendants. See Boyle v. Huff, 257 N.J. 468, 477 (2024) (appellate courts review a summary-judgment order de novo guided by the same standards that governed the trial court's decision). Defendant Park's contention that allowing discovery is inconsistent with the legislative intent underpinning UPEPA is belied by the language of the statute. N.J.S.A. 2A:53A-52(d) expressly authorizes a court to permit limited discovery. See Sanjuan v. Sch. Dist. of W.

18

N.Y., 256 N.J. 369, 378 (2024) ("The best evidence of [legislative] intent 'is the statutory language'" (quoting W.S. v. Hildreth, 252 N.J. 506, 518-19 (2023))). Permitting discovery also is consistent with summary judgment jurisprudence. See, e.g., Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 499 (App. Div. 2012) ("Where a party opposing a motion for summary judgment is unable to file fully responsive supporting papers because critical facts are particularly within the moving party's knowledge, the motion should be denied to permit the opposing party an opportunity for complete discovery.").

The court appropriately permitted discovery regarding publication, actual malice, and damages. Regarding publication, the October documents referenced defendants Park, Liang, and Biecagz by name and urged recipients to vote for them. The documents also indicated they were paid for by defendant CTE, an organization of which defendant Rousouli was the treasurer. The record supports the court's decision to permit discovery to determine whether each of the defendants had participated in publishing the allegedly defamatory statements, "critical facts [that] are particularly within the moving part[ies'] knowledge." Ibid. The CTE defendants' reliance on Skeoch v. Ottley, 377 F.2d 804, 805 (3d Cir. 1967), a case involving an appeal of an order denying a post-trial motion, is misplaced.

Like publication, fault is an element of a defamation claim. Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 585 (2009). "Fault, either negligence or malice, must also be proven." Petersen v. Meggitt, 407 N.J. Super. 63, 74 (App. Div. 2009). Even assuming the actual-malice standard applies, we perceive no error in the court's decision permitting discovery on this issue. "The actual-malice standard is a subjective standard that does not involve consideration of whether a reasonable person would have, or should have, known the statement was false but rather whether 'the defendant in fact entertained serious doubts as to the truth of his publication.'" Neuwirth v. State, 476 N.J. Super. 377, 393 (App. Div. 2023) (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)). "[T]he focus of the 'actual malice' inquiry is on a defendant's attitude toward the truth or falsity of the publication, on his subjective awareness of its probable falsity and his actual doubts as to its accuracy." Costello v. Ocean Cnty. Observer, 136 N.J. 594, 617 (1994) (quoting Lawrence v. Bauer Publ'g & Printing Ltd., 89 N.J. 451, 467-68 (1982)). As we held in Standridge v. Ramey:

> [T]here is an especially strong need for full discovery in a defamation action brought by a plaintiff who is classified as a "public official." The actual malice element of a defamation claim by a public official involves state of mind--did the defendant make the alleged defamatory statement with "knowledge" of its falsity or with "reckless disregard" for its truth or falsity? . . . To prove this state of mind, a plaintiff

20

generally will need to depose not only the defendant but also any other person who the defendant claims to have been a source of the alleged false information contained in the defamatory statement.

[323 N.J. Super. 538, 547-48 (App. Div. 1999) (citation omitted).]

Defendant Park's reliance on Neuwirth, 476 N.J. Super. 377, is misplaced. In Neuwirth, we held the plaintiff had asserted no facts from which a factfinder could conclude the defendant "knew, or had serious doubts about, the veracity of the allegedly defamatory statements he made." Id. at 393. Here, plaintiff was not a councilmember or a candidate but represented the Borough as special counsel. From the allegations in plaintiff's complaint, a factfinder could conclude defendants, who were former councilmembers, current candidates, and an entity working actively to elect candidates in the next election, knew or had serious doubts about the truth of statements asserting plaintiff was "get[ing] paid to run the Democrat Party" and was the "De[]facto Mayor" of a town with a "CORRUPTION" problem and who had been "Paid $800K+ TAXPAYER MONEY TO SELL US OUT."

Regarding the element of damages in plaintiff's defamation and libel per se claims, defendants focus on calls plaintiff and his firm received from clients and others about the allegedly defamatory statements. But plaintiff also alleged a councilmember had asked him if he was "on the take" or accepting

21

bribes and that he was terminated from his position as special counsel to the Borough days after the October 7 and 8 documents were published. On that record, we conclude a factfinder could determine plaintiff had suffered damages as a result of the allegedly defamatory statements and the court appropriately permitted discovery on that issue.

Finally, we address defendants' contention the court erred in finding statements at issue were defamatory as a matter of law. Specifically, the court identified statements in the October documents that were susceptible of a defamatory meaning and made the following findings regarding them:

- "That Kris Kim is scheming to pay off Democrat professionals, with [plaintiff's] photo prominently displayed."

- "That [plaintiff] 'gets paid to run the Democrat Party. IS THIS ILLEGAL BEHAVIOR?' when coupled with the allegation that Kim is scheming to pay [plaintiff], and positioned directly beneath the statement that [plaintiff] was paid $800K+."

- "That [plaintiff] 'was paid $800k+' is not a false statement, but the message is that he got paid that as part of a scheme to pay off professionals . . . ."

- "That Kim gave 'millions to Wunsch & Co in the name of settlement.'"

- "[']IS KRIS KIM HELPING BERGEN COUNTY DEMOCRATS FILL THEIR COFFERS BY ARRANGING TO BUILD THROUGH [PLAINTIFF]?['] Although phrased as a question,

when taken in the context of the entire flyer, the same defamatory message is there—that [plaintiff] is part of a scheme to divert Borough monies to Democrat cronies . . . ."

Defendants contend the statements were not actionable statements of fact about plaintiff or were non-actionable matters of opinion and, consequently, the court erred in finding they were susceptible of a defamatory meaning. We disagree.

"Every defamation case involves an assessment of 'whether the statement at issue is reasonably susceptible of a defamatory meaning.'" Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 253 (2018) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 765 (1989)); see also Singer v. Beach Trading Co., 379 N.J. Super. 63, 80 (App. Div. 2005) (holding a plaintiff in a defamation case must prove the defendant "made a defamatory statement of fact" (quoting Feggans v. Billington, 291 N.J. Super. 382, 390-91 (App. Div. 1996))). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." Petro-Lubricant, 233 N.J. at 253 (quoting Durando v. Nutley Sun, 209 N.J. 235, 248-49 (2012)).

"Whether the statement is susceptible of a defamatory meaning is a question of law for the court." DeAngelis v. Hill, 180 N.J. 1, 14 (2004)

23                                                                    A-3223-23

(quoting <u>Ward v. Zelikovsky</u>, 136 N.J. 516, 531 (1994)). "To determine if a statement has a defamatory meaning, a court must consider . . . '(1) the content, (2) the verifiability, and (3) the context of the challenged statement.'" <u>Leang</u>, 198 N.J. at 585 (quoting <u>DeAngelis</u>, 180 N.J. at 14). "[A] court must consider 'the listener's reasonable interpretation, which will be based in part on the context in which the statement appears.'" <u>Ibid.</u> (quoting <u>DeAngelis</u>, 180 N.J. at 15). "The allegedly defamatory statements must be viewed in the context of the whole publication." <u>Petro-Lubricant</u>, 233 N.J. at 254.

Because they "are generally not capable of proof of truth or falsity," i.e., verifiability, in that "they reflect a person's state of mind," opinions usually are not actionable. <u>Ward</u>, 136 N.J. at 531. However, "if the statement 'suggested specific factual assertions that could be proven true or false,'" an opinion statement could "'qualify as actionable defamation.'" <u>DeAngelis</u>, 180 N.J. at 14 (quoting <u>Ward</u>, 136 N.J. at 531). For example, "[l]anguage that could reasonably be understood as implying specific criminal acts on the basis of undisclosed factual allegations" does not fall within the penumbra of protection for opinions. <u>Kotlikoff v. Cmty. News</u>, 89 N.J. 62, 71-72 (1982).

Applying that standard to the statements at issue and viewing them "in the context of the whole publication," <u>Petro-Lubricant</u>, 233 N.J. at 254, we perceive no error in the court's conclusion that the statements are actionable as

defamation. A reasonable factfinder could conclude the statements were about plaintiff and contained "suggested specific factual assertions" that were harmful to his reputation and "could be proven true or false." Ward, 136 N.J. at 531.

For all of these reasons, we affirm the first May 31, 2024 order.

III.

We now turn to defendant Park's appeal of the other two May 31, 2024 orders and the April 11, 2024, November 21, 2023, and November 15, 2023 orders.

The court stayed the November 15, 2023 order five days after issuing it and vacated it in the first May 31, 2024 order. The vacation of the order rendered defendant Park's appeal of the November 15, 2023 order moot. N.J. Div. of Youth & Fam. Servs. v. A.P., 408 N.J. Super. 252, 261 (App. Div. 2009) ("An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy"). Accordingly, we dismiss the appeal of the November 15, 2023 order as moot. In re Protest of Cont. Award for Project A1150-08, N.J. Exec. State House Comprehensive Renovation & Restoration, 466 N.J. Super. 244, 260 (App. Div. 2021) (holding a court will not decide a case if it cannot grant effective relief and will generally dismiss a moot appeal).

Defendant Park did not submit any briefing analyzing the November 21, 2023 order. Accordingly, we deem any argument about that order waived and affirm the order. See Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018) ("An issue not briefed is deemed waived on appeal.").

We affirm the second May 31, 2024 order for the same reasons we affirm the first May 31, 2024 order. We affirm the third May 31, 2024 order in part for the same reasons we affirm the first May 31, 2024 order and in part for the reasons set forth in the order. We affirm the April 11, 2024 order in part for the same reasons we affirm the first May 31, 2024 order and in part for the reasons set forth in that order.

In sum, we dismiss as moot defendant Park's appeal of the November 15, 2023 order and affirm all other orders on appeal.

Affirmed in part; dismissed in part.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A- 3223-23